IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00350-RM-NYW

SHEA TRAINOR,

    Plaintiff,

v.

JANE DOE,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

    This action is before the court on Plaintiff Shea Trainor's ("Mr. Trainor" or "Plaintiff") Unopposed Motion for Leave to Conduct Discovery and Memorandum of Law in Support ("Motion for Leave to Conduct Discovery" or "Motion") [Doc. 2, filed February 8, 2022]. This court considers the Motion pursuant to 28 U.S.C. § 636(b), and the Order of Reference and Memorandum dated February 9, 2022, [Doc. 6; Doc. 8]. Upon consideration of the Motion and the applicable case law, this court respectfully **GRANTS** the Motion.

## BACKGROUND[1]

    Mr. Trainor initiated this action on February 8, 2022 by filing a Complaint wherein he asserts claims for breach of fiduciary duty and fraudulent inducement against Defendant Jane Doe. [Doc. 1]. In mid-2020, Mr. Trainor found the website "www.monicajavorcic.com" ("first website") which "contained explicit representations that it was the official website for licensed-Colorado broker 'Monica Javorcic.'" [*Id.* at ¶¶ 6–7]. Mr. Trainor and his father then proceeded

---

[1] The following facts are drawn from the Complaint [Doc. 1] and taken as true for the purposes of the instant Motion.

to communicate with the website operator through the email address "monica@monicajavorcic.com" and by phone with a woman who represented herself to be "Monica Javorcic" ("Jane Doe" or "Defendant"). [*Id.* at ¶¶ 8–9]. Believing that person to be Monica Javorcic, as she claimed, Mr. Trainor and his father then retained her services and invested $100,000 in cryptocurrency with her. [*Id.* at ¶¶ 8–11]. Thereafter, without discussing her plans with Mr. Trainor, the person claiming to be Monica Javorcic transferred Mr. Trainor's funds to an entity called Lumentrades Financial Incorporated ("Lumentrades"). [*Id.* at ¶¶ 11–12].

On February 23, 2021, Mr. Trainor emailed Lumentrades customer service regarding the status of his account after he attempted to withdraw his funds, via the Lumentrades website and telephone number, but was unable to do so. [*Id.* at ¶¶ 13–14]. In response to his email, Lumentrades informed Mr. Trainor that it charged a fee of 10% of his total profits—or $18,894.00—that Mr. Trainor was required to pay before Lumentrades would release his funds. [*Id.* at ¶¶ 15–19]. This fee "raised an immediate red flag for Mr. Trainor," which prompted him to retain the services of a private investigator "to look into Lumentrades and Jane Doe." [*Id.* at ¶¶ 21–22]. The investigation company, Brightstar Investigations, "subsequently discovered through a Google search of 'Lumentrades' that the Director of the Department of Consumer and Business Services for the State of Oregon, by and through the Division of Financial Regulation ('Division'), served on Lumentrades an order to cease and desist for violations of the Oregon Securities Law." [*Id.* at ¶ 23]. Mr. Trainor later discovered that Lumentrades, at the time of his investment, "was not [ ] licensed as a broker-dealer in Oregon, Colorado, or New York for purposes of cryptocurrency." [*Id.* at ¶ 26]; *see also* [*id.* at ¶¶ 27–30]. Mr. Trainor alleges he "would never have authorized investing his cryptocurrency funds with Lumentrades due to their lack of required state licenses." [*Id.* at ¶ 36].

2

Mr. Trainor also ultimately learned that Jane Doe was not Monica Javorcic. *See generally* [Doc. 1]. On June 20, 2021, Mr. Trainor "served the real Monica Javorcic in Colorado with a demand to return the cryptocurrency funds taken from him." [*Id.* at ¶ 37]. One month later, Ms. Javorcic's attorney notified Mr. Trainor that Ms. Javorcic "had been impersonated by the person behind the website www.monicajvorcic.com." [*Id.* at ¶ 38]; *see also* [Doc. 1-5 (Affidavit of Monica Javorcic)]. Although Ms. Javorcic was later able to remove the first website bearing her namesake from the Internet, another website, "www.monicajavorcic.org" ("second website"), took its place shortly thereafter. [*Id.* at ¶¶ 40–41].

On September 15, 2021, Mr. Trainor, through his counsel, sent a litigation hold notice and evidence preservation demand letter to the domain registrar for the second website, Name.com, Inc. ("Name.com"). [*Id.* at ¶ 42]. The second website was taken down sometime thereafter. [*Id.* at ¶ 44]. Mr. Trainor continued to learn information related to the websites throughout his investigation, including that, to protect her identity, Jane Doe used the services provided by Domain Protection Services, Inc. ("Domain Protection Services")—"an Internet company which offers subscribers to list Domain Protection Services, Inc., as their administrative and technical contact" on a database of all registered Internet domain names for the purpose of "keeping the domains owners' identifying information out of the public record." [*Id.* at ¶¶ 45–51]. Mr. Trainor alleges that Jane Doe used Domain Protection Services "to prevent her personally identifying information, including her name and address, from being listed on" the database in association with the first website and second website. [*Id.* at ¶¶ 51, 58]. Mr. Trainor also alleges that "Jane Doe or an agent of Jane Doe" created and controlled the first website and second website. [*Id.* at ¶¶ 56, 59]. Mr. Trainor further alleges that "Name.com exclusively sells and provides privacy services through Domain Protection Services, Inc." [*Id.* at ¶ 53].

As of February 8, 2022—the day Mr. Trainor filed the Complaint—he "remains deprived of over $100,000.00 USD in cryptocurrency funds belonging to him." [*Id*. at ¶ 60]. That day, Mr. Trainor also filed the instant Motion for Leave to Conduct Discovery [Doc. 2], seeking leaving pursuant to Federal Rule of Civil Procedure 26(f) "to conduct the discovery necessary to identify the presently-unknown Jane Doe defendant(s)." [Doc. 2 at 1]. Mr. Trainor asserts that, after he has "determined the name(s) and identity/identities of the Jane Doe defendant(s), he will amend his complaint to include them and properly go forward in this case." [*Id.*].

## ANALYSIS

Under Federal Rule of Civil Procedure 26(d)(1), discovery generally may not commence until after the parties have conferred as required by Rule 26(f). *See Qwest Commun. Intern., Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). The court may, however, "in the exercise of its broad discretion, alter the timing, sequence, and volume of discovery" upon a showing of good cause. *Id.*; *see also Liberty Media Holdings, LLC v. Colo. Members of Swarm,* No. 11-cv-01170-WJM-KMT, 2011 WL 1812554, at *1 (D. Colo. May 12, 2011) (citations omitted). The early discovery must be "narrowly tailored to seek information necessary to support expedited or preliminary relief." *Avaya, Inc. v. Acumen Telecom Corp.,* No. 10-cv-03075-CMA-BNB, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011).

Good cause to permit early discovery may exist where the plaintiff seeks to ascertain the identity of an unknown defendant. *See, e.g.*, *Arista Records LLC v. Does 1–9,* No. 07-cv-00628-EWN-MEH, 2007 WL 1059049, (D. Colo. Apr. 4, 2007) (permitting issuance of subpoenas on third party ISPs for purpose of ascertaining identity of Doe defendants); *Adv. Career Techs., Inc. v. Does 1–10*, No. 13-cv-00304-WJM-KLM, 2013 WL 1934005, at *1 (D. Colo. Mar. 11, 2013) ("[T]here is no other feasible method for Plaintiff to obtain the identity of John Does 1–10 other

4

than through service of third party subpoenas prior to the commencement of discovery in this matter … The Court thus finds that good cause exists to permit Plaintiff to serve subpoenas on third parties with the purpose of discovering the Doe Defendants' identities.").

The court finds that good cause exists here to permit Mr. Trainor to conduct expedited discovery to discover the identity(ies) of the Jane Doe Defendant(s). In the Motion, Mr. Trainor represents that, before he commenced this action, he investigated in an effort to identify the Jane Doe defendant(s) but was unsuccessful. [Doc. 2 at 2]. Mr. Trainor asserts that he was, however, able to discover the identities of "interactive computer service operators and others who may be in possession of valuable information related to the identity of the Jane Doe defendant(s)." [*Id.*]. Mr. Trainor states that he intends to serve subpoenas upon three entities, pursuant to Rule 45, "which will request that they produce documents identifying the Jane Doe defendant(s). [*Id.*]. Those three entities are (1) Name.com, "the registrar and host" of the first website and second website; (2) Domain Protection Services—"the privacy proxy service used by the Jane Doe defendant to conceal her name and other identifying information associates with" the first website and second website; and (3) Lumentrades, the company with which the Jane Doe Defendant(s) invested Mr. Trainor's funds. [*Id.* at 2–3].

In *Arista Records,* a copyright infringement action, the court permitted expedited discovery regarding a third-party Internet Service Provider ("ISP") for the limited purpose of allowing the plaintiffs to "determine the true identities of the Doe Defendants." *Arista Records*, 2007 WL 1059049, at *1–2. The court authorized the plaintiffs to serve a subpoena on the ISP to "seek[] information sufficient to identify each Defendant's true name, address, telephone number, e-mail address, and Media Access Control address. *Id.* at *2. Similarly here, Mr. Trainor represents that Defendant has engaged in anonymous online behavior, and thus far, Mr. Trainor has been

5

unsuccessful in his attempts to ascertain the identity(ies) of the Jane Doe Defendant(s) through informal, pre-suit investigation. *See* [Doc. 2 at 1, 4–5]. Because it appears likely that Mr. Trainor will continue to be thwarted in his attempts to identify the Jane Doe Defendant(s) without the benefit of formal discovery mechanisms, the court finds that Mr. Trainor should be permitted to conduct expedited discovery, pursuant to Rule 45, for the limited purpose of discovering the identity(ies) of the Jane Doe Defendant(s).

Mr. Trainor also attaches as Exhibits a copy of each of the proposed subpoenas that he intends to serve upon the three entities, *see* [Doc. 2-2; Doc. 2-3; Doc. 2-4], and the court finds that the proposed subpoenas are narrowly tailored for such purposes. *See, e.g.*, [Doc. 2-2 at ¶ 1 (seeking "[f]rom [ ] January 1, 2019, until present, all account documents, including account information that identities [sic] the true name, current and permanent addresses, billing address, telephone numbers, email address, IP addresses, and Media Access Control ('MAC') addresses of the owners(s)/registrant(s) of the domain names associated with the websites www.monicajavorcic.com and www.monicajavorcic.org.")]. The court thus finds that good cause exists to permit Mr. Trainor to serve the subpoenas on Name.com, Domain Protection Services, and Lumentrades.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Leave to Conduct Discovery [Doc. 2] is **GRANTED**;

(2) Plaintiff may serve the third-party subpoenas attached to the Motion, [Doc. 2-2; Doc. 2-3; Doc. 2-4], respectively, on Name.com, Inc.; Domain Protection Services, Inc.; and Lumentrades Financial Corporation **no later than February 28, 2022**;

(3) Plaintiff shall also serve each entity a copy of this Order with each subpoena;

(4) Plaintiff may only use the information disclosed in response to the subpoenas for the purpose of protecting and enforcing his rights as set forth in the Complaint [Doc. 1]. The Court warns Plaintiff that improper use of the information obtained by the subpoenas may result in sanctions.

DATED: February 14, 2022

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge